# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

| | |
|---|---|
| PAULA WARREN, <br><br> *Plaintiff*, <br><br> v. <br><br> TARGET CORPORATION, *and* <br> TARGET STORES, INC., <br><br> *Defendants*. | CASE NO. 3:09-cv-00045 <br><br><br> <u>MEMORANDUM OPINION</u> <br><br><br> JUDGE NORMAN K. MOON |

This matter is before the Court upon Defendants' Motion for Summary Judgment and Memorandum in Support thereof, filed September 2, 2010 (docket nos. 32 and 33), and the subsequent filings in relation thereto. At the conclusion of the September 21, 2010 hearing, I granted Defendants' Motion for Summary Judgment. This memorandum opinion sets forth my reasons for so doing.

## I. BACKGROUND

Plaintiff Paula Warren ("Warren" or "Plaintiff"), a resident of the Commonwealth of Virginia, was shopping at the Target store in Culpeper, Virginia on May 23, 2007 with her boyfriend, Richard Fincham, and her niece, Darnesha Woodard. Ms. Warren and Ms. Woodard approached a family fitting room in the dressing room area of the store to try on bathing suits together. When Ms. Woodard first tried to open the closed fitting room door, she noted it was "stuck", and she had to push it hard to get it to open. Pl.'s Dep. 61-62, Feb. 9, 2010; Woodard Dep. 18-19, Feb. 9, 2010. A dressing room attendant employed by Target was present at the time, but she was not told about the stuck door. *See* Pl.'s Dep. 62-64; Woodard Dep. 19.

After trying on bathing suits, Ms. Woodard left the dressing room; Ms. Warren did not notice any problems using the door to exit. Pl.'s Dep. 64-65. When Ms. Warren attempted to open the door to exit the dressing room, the door fell on her "from the top first", striking her in the face. *Id.* at 66.

Mr. Fincham inspected the door and its hinges after it fell and observed that the screws that were hanging on the hinge and that had fallen to the floor were "real small", approximately "five-eighths of an inch" long. Fincham Dep. 48, 50, Feb. 9, 2010. After the incident, Mr. Fincham also inspected the adjacent fitting room's door, and noticed that the screws in the hinge of that door were "loose" and "about halfway out". *Id.* at 52-53.

The Target store in Culpeper opened in March 2007. Prior to opening, Target hired Conlon Construction Company to install the fitting rooms in the store. Target provided the materials and specifications for constructing the fitting rooms, and Conlon Construction performed the installation. *See* Fixture Installation Project Agreement, Ex. E to Def.'s Mot. for Summ. J.

After the store opened, a maintenance employee hired by Target was tasked with performing monthly preventive inspections of the store and daily "housekeeping checks". Tomsky Aff., Sept. 2, 2010. On May 1, 2007, the maintenance person performed a monthly preventive inspection and found no defects in the fitting room doors or in their hinges. *Id.* On May 22, 2007, one day before the incident, the maintenance person performed a daily housekeeping inspection of the fitting room and did not report any problems with the fitting room doors. *Id.*

Warren sued Target Corporation and Target Stores, Inc. (collectively "Target") for negligence, seeking damages of $500,000 plus costs and interest. Warren filed her complaint on

May 15, 2009 in the Circuit Court for the County of Culpeper, and it was removed to this Court on the basis of diversity. Target moved for summary judgment on Sept. 2, 2010, alleging that Warren failed to produce sufficient evidence to establish that the door was in a defective condition, that the defect caused the door to fall, and that Target had notice of the defect.

II. APPLICABLE LAW

A. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that a court should grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). To preclude summary judgment, a factual dispute must not only be material, but also "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). However, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250.

In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). If the nonmoving party bears the burden of proof, "the burden on the moving party may be discharged by 'showing' . . . an absence of evidence to support the nonmoving party's case."

*Celotex*, 477 U.S. at 325. If the moving party shows such an absence of evidence, the burden shifts to the nonmoving party to set forth specific facts illustrating genuine issues for trial. *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. Summary judgment is appropriate if, after adequate time for discovery, the nonmoving party fails to make a showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The nonmoving party cannot defeat a properly supported motion for summary judgment with mere conjecture and speculation. *See Glover v. Oppleman*, 178 F. Supp. 2d 622, 631 (W.D. Va. 2001) ("Mere speculation by the non-movant cannot create a genuine issue of material fact." (citing *Cox v. County of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001)). Indeed, the trial judge has an "affirmative obligation" to "prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 317).

B. PREMISES LIABILITY

To establish a negligence case under Virginia law, a plaintiff must show "the existence of a legal duty, a breach of the duty, and proximate causation resulting in damage." *Atrium Unit Owners Ass'n v. King*, 266 Va. 288, 293, 585 S.E.2d 545, 548 (2003).[1] "[A]n owner or occupier of real property owes to an invitee the duty to exercise reasonable care to make the premises safe" but "is not an *insurer* of the safety of the premises." *Gauldin v. Va. Winn-Dixie, Inc.*, 370 F.2d 167, 169 (4th Cir. 1966).

To fulfill its duty, the business owner is "required to have the premises in a reasonably safe condition" and to warn the customer of any unsafe condition that the owner knew about or

---

[1] Defendant removed this case from the Circuit Court for the County of Culpeper to this Court pursuant to this Court's original jurisdiction under 28 U.S.C. § 1332(a), as there is complete diversity between the parties and the amount in controversy exceeds $75,000. Federal courts sitting in diversity apply the substantive law of the forum state. *Salve Regina College v. Russell*, 499 U.S. 225, 226 (1991). Therefore, the elements of Plaintiff's negligence claim are drawn from Virginia substantive law.

should have known about given the length of time it existed. *Colonial Stores, Inc. v. Pulley*, 203 Va. 535, 537, 125 S.E.2d 188, 190 (1962); *see also Miracle Mart, Inc. v. Webb*, 205 Va. 449, 453, 137 S.E.2d 887, 890 (1964) (stating that "to impose liability for injury to an invitee the dangerous condition must have been known" by the business, either by actual or constructive knowledge); *Gall v. Great Atl. & Pac. Tea Co.*, 202 Va. 835, 837, 120 S.E.2d 378, 380 (1961) (stating that such duty requires a business to "warn persons invited to use its premises of dangers which are known to it and unknown to the invitee").

The invitee has the burden of proving negligence by a preponderance of the evidence and therefore must "show that the owner or occupant either knew, or should have known by the exercise of reasonable care and diligence, of a defect or unsafe condition." *Gauldin*, 370 F.2d at 169; *see also S. Floors & Acoustics, Inc. v. Max-Yeboah*, 267 Va. 682, 689, 594 S.E.2d 908 (2004); *Safeway Stores, Inc. v. Tolson*, 203 Va. 13, 121 S.E.2d 751 (1961). It is the plaintiff's burden to "show why and how the incident happened. And if the cause of the event is left to conjecture, guess, or random judgment, the plaintiff cannot recover." *Town of W. Point v. Evans*, 224 Va. 625, 627-28, 299 S.E.2d 349 (1983); *see also Hoffner v. Kreh*, 227 Va. 48, 51-52, 313 S.E.2d 656, 658 (1984).

### III. DISCUSSION

To establish a prima facie case of negligence, Warren must produce evidence that (1) Target owed her a duty; (2) the condition of the fitting room door constituted an unsafe condition; (3) that unsafe condition proximately caused the accident; (4) Target had actual or constructive notice of the unsafe condition and failed to either correct it within a reasonable period of time or notify Warren; and (5) as a result, Warren suffered injuries. *See Gauldin*, 396 S.E.2d at 650; *Colonial Stores*, 125 S.E.2d at 189-90. As stated in the cases above, Target had a

duty to remove or warn about any "unsafe" or "dangerous condition" of which it had actual or constructive knowledge.

Assuming *arguendo* that the fitting room door constituted an unsafe condition that caused Plaintiff's injuries, Warren has not met the burden of demonstrating that Target had actual or constructive notice of the existence of the unsafe condition. Viewing the evidence in the light most favorable to Plaintiff as the nonmoving party, Warren has only shown that the fitting room door was difficult to open moments before it fell, and that a door in such condition may be sagging from a loose hinge. Warren has failed to show that the door was difficult to open at any point in time before the moment Ms. Woodard attempted to open it. Thus, it has not been shown that Target had any knowledge the door was difficult to open.

This situation is unlike that in *Franconia Associates v. Clark*, where the Court found the evidence sufficient for a jury to find that the premises owner had constructive notice of a defective door based on a disinterested witness's observation that the door had problems closing weeks before the incident. 250 Va. 444, 448, 463 S.E.2d 670, 673 (1995). Here, Plaintiff has supplied no testimony or other evidence as to the condition of the door at any time before Ms. Warren entered the store.

Warren also claimed that the screws in the door's hinges were improperly inserted by the independent contractor, and that Target should have been aware of the presence of that unsafe condition. Even if Warren's scenario is believed, this Court has been shown no evidence that Target should have been aware of a mistake made by the independent contractor. An unsafe condition created by an independent contractor is not necessarily discernable by the owner. *See, e.g.*, *Brock v. Wal-Mart Stores, Inc.*, No. 98-2127, 2000 U.S. App. LEXIS 366, at *4-5, 2000 WL 19158, at *2 (4th Cir. Jan. 12, 2000) (unpublished) (finding that store employees could not

ascertain through reasonable inspection that screws had not been fully inserted in swing set assembled by independent contractor). More evidence is undoubtedly required to support Warren's allegation that Target had notice of an error in assembly, assuming such an error existed.

Quite simply, Warren has proffered insufficient evidence that Target knew or should have known of a problem with the fitting room door. Warren did not depose a single Target or Conlon Construction employee or submit any written discovery. Warren's evidence largely consists of the depositions of Plaintiff and her friends and family, none of whom can attest to the condition of the door or Target's knowledge of its condition prior to the incident.

Target has supplied testimony and inspection logs to show that a maintenance employee conducted monthly and daily inspections of the family fitting room in question. As part of the monthly preventive inspection conducted on May 1, 2007, the maintenance employee examined the family fitting room and checked the functionality of the doors. No problems were noted. On May 22, 2007, the maintenance employee completed a daily "housekeeping" inspection of the fitting rooms, and observed no problems with the doors. These inspections satisfied Target's duty to uncover, with reasonable care and diligence, any unsafe conditions in its fitting rooms.

Because Warren has failed to meet her burden to establish that Target had reason to know of an unsafe condition, Warren cannot demonstrate that Target breached a duty owed to her. Thus, a discussion of the existence of an unsafe condition and causation are irrelevant.

IV. CONCLUSION

As stated on the record at the conclusion of the September 21, 2010 hearing on this matter, and for the reasons stated above, Defendants' Motion for Summary Judgment has been granted, and this matter is stricken from the active docket of the court. Defendants' Motion in

Limine To Exclude Evidence of Jack Shore's Past Alcohol Related Problems (docket no. 40) and Motion in Limine to Exclude Door Hinge Catalogue, et al. (docket no. 42) are denied as moot.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to Plaintiff, and to all counsel of record.

Entered this 23rd day of September, 2010.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE